FILED

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

2012 APR 12 PM 2:18

CLERK, US DISTRICT COURT
MIDDLE DISTRICT OF FL
JACKSONVILLE FLORIDA

LEV TESLER,

    Plaintiff,

vs.

CASE NO. 3:12-CV-411-J-20JBT

BJ'S WHOLESALE CLUB, INC.,
a foreign corporation d/b/a BJ'S
WHOLESALE CLUBS NOS 108,
125 AND 171,

    Defendant.
_____/

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff Lev Tesler sues Defendant BJ's Wholesale Club, Inc. d/b/a BJ's Wholesale Clubs Nos. 108, 125, and 171, and alleges:

(Jurisdiction and Preliminary Statement)

1. In this employment discrimination suit, Plaintiff seeks monetary damages and lost wages and benefits valued in excess of $75,000, and other appropriate relief under the Florida Civil Rights Act, *as amended,* Fla. Stat. §§ 760.01-760.11 (FCRA). He submits that Defendant wrongfully denied him a promotion to store meat department manager and later terminated him because of his national origin (Moldova, former USSR republic), age, disability, or retaliation for seeking reasonable accommodations for his disability (lunch breaks and limited relief from department closing duties because of his diabetes). He also submits that Defendant in denying him those accommodations discriminated against him based on his disability. Because the amount in controversy exceeds $75,000 and the parties are citizens of different states, the Court has diversity jurisdiction over this action under 28 U.S.C. § 1332.

(Parties)

2. Currently and throughout his years of employment with Defendant (2005-2010) as a meat cutter at Defendant's stores in Jacksonville (Atlantic Boulevard Store No. 108 and Phillips Highway Store No. 171) and Orange Park (Blanding Boulevard Store No. 125) Plaintiff Lev Tesler ("Plaintiff" or "Tesler") has resided in Jacksonville, Florida.

3. Defendant BJ's Wholesale Club, Inc., ("Defendant" or "BJ's") is a Delaware corporation headquartered in Massachusetts and registered to do business in Florida which employed Tesler as a meat cutter at its stores in Duval and Clay counties, operating under the fictional names BJ's Wholesale Clubs Nos. 108 (Atlantic Boulevard), 171 (Phillips Highway), and 125 (Blanding Boulevard) between July, 2005, and January 2010.

(Statement of Claim)

4. Tesler is a native of Moldova, a former republic of the USSR. He moved to the United States in 1991 and became a U.S. citizen in 1998. On May 4, 2012, he turns 61.

5. Prior to emigrating to the U.S., Tesler had substantial experience (15+ years) growing and managing a grocery business or operation in Moldova and 6 years experience cutting, grading and selling meat and fish to the public.

6. Upon relocating to the U.S., Tesler understood that his years of experience, education, and training in the USSR would not be readily recognized by or transferable to American companies and that he would likely have to start from the bottom, prove himself, and work his way up within any organization or business.

7. Immediately prior to accepting a meat cutter's position with BJ's, Tesler had worked for about 7 years at Publix as a meat cutter during which time he garnered accolades for

customer service, hard work, and dedication from not only his immediate managers but from corporate officials as well. In addition, while he held down his job as a meat cutter for Publix, for 8 years he also owned and managed a restaurant and an Eastern European delicatessen store in Jacksonville. He only sold it when his sons grew up and could no longer help him operate it.

8. In 2005, Tesler applied and interviewed for a meat cutter's position at BJ's Atlantic Boulevard store in Jacksonville. A key factor that led Tesler to leave Publix and accept this position with BJ's, was the opportunity to move into management. The general manager for BJ's who hired Tesler, Bob Stanley, promised Tesler that he would be given an opportunity to manage a store's meat department if Tesler worked hard, proved himself, and a position became available. A hard worker willing to put in long hours and skilled and experienced meat cutter, in July, 2005, Tesler went to work for BJ's as a meat cutter and hit the ground running and with management ambitions.

9. At the time Tesler was hired by Defendant, he had approximately 13 years of meat cutting experience. Although Tesler worked hard and put in long hours, his experience and skill as a meat cutter also did not escape the attention of his department manager or store manager.

10. After about a year of working as a meat cutter for BJ's, in 2006 the meat manager at Defendant's Atlantic Boulevard store was fired because his department had a lot of food going bad that was not promptly thrown away. Tesler spoke to his general manager, Bob Stanley, about the position. Stanley told Tesler that he could not help him or recommend his promotion because he, Stanley, was not in the good graces of upper management at the time (Stanley was fired several months later) and the district manager would not approve of Stanley's recommendation because the district manager held Stanley partially responsible for the meat

department's performance at the Atlantic Boulevard store and indicating that Tesler's desired promotion was the district manager's call. Instead, it promoted a young male employee from the Orange Park store (age 25-30), Nick, to the meat manager's position at the Atlantic Boulevard store. At about the same time as the Atlantic Boulevard meat manager's position came open and Tesler was first seeking a meat manager's position, Defendant also filled the meat manager's position at the Orange Park store, promoting Stevie Campbell (age 40-45) to the position. To the best of Tesler's knowledge, the Orange Park position was not posted and neither Nick nor Stevie Campbell had prior market management experience when they were promoted to the position of store meat department manager.

11. In late 2007, another meat department manager's position came open at the Phillips Highway store, a very busy store, when Joe left. Tesler again applied for the position. Although Tesler's immediate manager "strongly recommended" plaintiff, Tesler did not receive the promotion and was not even interviewed, allegedly because his performance evaluation was not good enough. Instead, Defendant transferred Nick, the meat manager at the Atlantic Boulevard store, to the Phillips Highway store. When Nick left, a young employee (35-40) from Fresh Market was hired for the meat manager's position to replace Nick. Again and despite his hard work, experience, qualifications, and ongoing interest in the position of store meat manager, Tesler was also not called to interview for the Atlantic Boulevard vacancy when Nick was transferred. To the best of Tesler's knowledge, the vacancy at the Atlantic Boulevard store was never even posted and Nick never advised Tesler of the opening his transfer would create despite his earlier assurances that he would help Tesler secure a meat manager's position when one became available. Despite his disappointment over being summarily passed over again for the position, Tesler did

not give up and continued to work hard towards his goal of becoming a store meat manager.

12. When Tesler was transferred to the Orange Park store in mid- to late 2006, its meat department was among the worst if not the worst and poorest performing meat department in Defendant's stores in the Northeast Florida region. However, due in large part to Plaintiff's hard work and efforts, often when the department was short-handed and he had to man the department alone, over the next two years Tesler helped transform the meat department at the Orange Park store into the best in Northeast Florida.

13. Sometime in late 2007, Tesler received a "rising star" award, one of three given out to employees in the entire store. And, in April of 2008, Defendant recognized Tesler as Orange Park store employee of the month, recognized for his excellent customer service and dedication.

14. In Tesler's annual performance evaluation of July 3, 2008, he received "outstanding" (the highest score) in all categories and glowing remarks to support those evaluations. Tesler's meat department manager at the time, Stevie Campbell, told Tesler and upper management that Tesler was ready to become a meat department manager. Several times, in the presence of Tesler, Campbell told the district manager, Archie Hogue, that Tesler was ready to become a store meat department manager. During at least one of those conversations the store manager, David Groom, was also present and voiced agreement with Campbell's support for Tesler. Indeed, Tesler met with his district manager on more than one occasion to discuss Tesler's desired promotion to meat department manager. Tesler begged his district manager for an opportunity to prove himself and would request a temporary placement in the position and so that if he could not handle the position, he could be easily removed. Hogue would tell Tesler that he knew Tesler could handle the position but used the excuse that it was not his call but the general

or store manager's decision.

15. In June or July of 2008, a meat manager's position again became available at the Phillips Highway store. Tesler applied for the position and was interviewed by the store manager, Tom. However, Defendant hired a young woman (about age 30) from out-of-state with less experience and less qualifications than Tesler for the position, Jennifer Schilling. No explanation was offered to Tesler at the time as to why he was not selected. However, the Phillips Highway store manager later came into the Orange Park store as a customer and Tesler asked him why he did not get the meat department manager's position at his store. Tom's response was that he, Tesler, was allegedly not ready. Jennifer Schilling proved unable to handle the meat manager's job satisfactorily and was removed from the position after several months. Although Defendant was well aware of Tesler's interest in and qualifications for the position, instead of Tesler, Defendant promoted a younger employee (age 40-42), Keith Mansell, who was from New Jersey and to the best of Plaintiff's knowledge had no prior management experience into the meat manager's position at the Phillips Highway store. Tesler did not formally reapply for the position when Jennifer was let go because the job was never posted and Tesler did not learn that Jennifer had been removed until after the position had been given to Keith Mansell. No explanation was ever offered to Tesler as to why he had not been considered.

16. In his annual performance evaluation in July, 2009, Tesler received a "very good" overall evaluation and several months later, in October, 2009, the meat manager's position again came open at the Atlantic Boulevard store. Tesler again applied for the position but was never called for an interview. Instead Defendant moved at company expense a young employee from Tampa (age 25-27), another Keith without much meat cutting experience and promoted him to

the Atlantic Boulevard store's meat manager's position. Tesler's former store manager, David Groom, who had given Tesler outstanding marks in 2008 and had previously endorsed Stevie Campbell's view that Tesler was ready for the position, never even called Tesler for an interview. Tesler asked his store manager, Joe Brown, why he had never even been called for an interview by Groom. Brown did not have an answer but told Tesler that he, Brown, had offered Groom to interview Tesler personally for the position but Groom had rejected the offer without explanation.

17. In 1997 Tesler was diagnosed with diabetes. Although not insulin-dependent, he has had to monitor and modify his diet and monitor his blood-sugar levels. Because of his condition, Tesler was required to eat smaller meals or snacks more often and to take breaks and get off his feet when possible. Defendant and Tesler's managers first became aware of Tesler's diabetes in 2006 when Tesler told his manager, Stevie Campbell.

18. Because the meat department at the Orange Park store was often short-handed, throughout much of 2009, Tesler was often expected and required to work through his lunch break even though he was docked and not paid for such breaks. Although Tesler continued to perform whatever tasks were assigned to him in the short-handed department including having to work through his lunch breaks, starting in early 2009, he did speak with his managers about his diabetes and requested because of his condition his lunch and other breaks and relief from having to close 3-4 nights a week after largely running the department himself. These requests resulted in no noticeable changes in the number or length of lunch or other breaks that Tesler was allowed to take or the number of nights Tesler was required to close the department.

19. In or about September, 2009, Tesler's right leg reddened and swelled because of his

diabetes and he had to seek medical attention for it. His doctor took him out of work for three (3) days and instructed Tesler to stay off his leg as much as possible. His manager, Stevie Campbell, was angry at Tesler over Tesler's temporary absences because Campbell had to close the department those evenings while Tesler was out of work. While Tesler notified Defendant and did as his doctor instructed, he did not overuse or abuse his sick leave as a means of coping with his diabetes. He always put in the time to do the tasks assigned to him and when he was later terminated in January of 2010, left with over 130 hours of unused sick leave.

20. Tesler's missed lunch and other breaks and department closings produced long hours on his feet and played havoc with his diabetes. Defendant could have reasonably accommodated Tesler's requests either by rotating closing duties on a more equitable basis or hiring additional employees for the meat department as they did shortly before Tesler's termination.

21. On the heels of Tesler's ongoing requests to his managers for breaks and to close less often, starting in or about October, 2009, Defendant started writing him up for alleged customer complaints and on or about January 6, 2010, terminated Tesler allegedly because of these customer complaints.

22. These alleged customer complaints were unfounded and untrue (some alleged complaints were not even presented to Tesler at the time and curiously his department manager was never in the department when any customer allegedly complained) or inadequately if at all investigated by Defendant before presented to Tesler as claimed statements of fact in exaggerated write-ups. Defendant was intent on papering Tesler's file in an effort to justify disciplinary action against Tesler even going so far as to manufacture write-ups after the fact for claimed incidents that allegedly occurred in 2008 or 2009 when Tesler had received, respectively,

"outstanding" and "very good" evaluations.

23. Whenever Defendant confronted Tesler with an alleged customer complaint in the months preceding his termination, Tesler would accurately deny the accusation and explain that he was never rude or impolite and or had never refused a customer service. In an effort to defend himself against these baseless accusations, Tesler requested details – dates, times, copies of any complaints authored by customers, the identities or physical descriptions of any customers and the identities of any alleged corroborating witnesses. Only twice did Defendant provide Tesler with any information that enabled him to recall the claimed incidents.

24. During the first of these two recalled incidents, sometime in November 2009, Tesler was by himself in the department. A lady asked Tesler if he had any London broil while Tesler was assisting another customer. Tesler politely advised the lady where London broil was in the case and told her that if she didn't like what was in the case, he would be glad to cut her another piece once he finished assisting the member he was serving. After he finished serving the other member, Tesler was ready to assist the lady (if she needed it) but she wasn't around anymore. A few days later, Tesler found out the lady had apparently complained that he was rude to her. Defendant never provided any corroboration of her alleged complaint – no written complaint or even her name.

25. During the second of these two recalled incidents, sometime in December 2009, again Tesler was by himself in the meat department. When he worked alone, he had to: watch the case (rotate and keep it well stocked by cutting or grinding, packaging and pricing meat), cook chicken, answer phone calls and serve customers. A woman came to Tesler and asked if he had any whole eye of round roast. She did not like or want either of the two packaged pieces that

were in the case. In response to her request, Tesler went to the cooler, picked about 7 additional pieces, priced them and took them to the woman and asked her to pick the one she liked. A few days later, Tesler was told that this woman complained that he was rude to her. Again, Defendant never provided any corroboration of her complaint. Tesler was never rude to customers. Sometimes, he may have looked or sounded upset or unhappy because he was tired and hungry and his diabetes affected his appearance and mood. However, Tesler was never afforded the opportunity of confirming from either of these two complaining customers that they may misinterpreted Tesler's appearance or manner of speaking as rudeness.

26. Defendant knew the alleged customer complaints against Tesler were unfounded or exaggerated but unfairly and unlawfully used them as pretextual excuses to cover up its retaliatory and/or discriminatory motivation behind ultimately terminating Tesler. Tesler treated meat department customers no differently in the final months of his employment with Defendant than he did during any period of his employment including those in which he garnered employee awards and outstanding evaluations for, among other things, his customer service.

27. When the alleged customer complaints were brought to Tesler's attention, Tesler spoke to his store manager, Joe Brown, about them and their substance. Brown assured Tesler that he had nothing to worry about, there was nothing serious and that if there were he, Brown, would know about it and have to terminate Tesler. Brown assured Tesler that his job was secure, that he, Brown, supported Tesler and that only he could fire Tesler.

28. At worst Defendant knew that Tesler was guilty of working in an often understaffed meat department in which it was physically impossible for a meat cutter tasked with simultaneous demands on his time and services to accomplish them all in the manner requested.

Tesler could not always immediately drop whatever he was going (often for one customer) in order to service another. He has a strong foreign accent and to an ear not accustomed to it, a gruff and halting manner of speaking. However, he always prided himself on his customer service and his efforts in that regard had been recognized in the past by Defendant as well as his prior employers. Out of necessity at times he may well have come across as short with some customer simply because of his manner of speaking and multiple demands placed on his available time. He was never knowingly or intentionally rude to any customers but always professional and polite. He would not have survived in this customer service industry for as long as he has by being rude, unprofessional, or impolite to customers.

29. Other short-handed meat cutters in Defendant's stores were not immune to customer complaints generated by service-related delays or curt service. Such complaints were always the bane of understaffed meat departments and Defendant's stores were no exception. Based on Tesler's information and belief, younger, American-born, non-disabled meat department employees of Defendant at its Northeast Florida stores were also on occasion the subjects of customer complaints of comparable if not greater severity than any actual complaints ever lodged against Tesler yet they were never terminated because of such complaints.

30. Although Tesler's managers, including Campbell and Groom, had earlier voiced support for promoting him to meat department manager, during the later part of 2009, Campbell several times made joking remarks about Tesler being an "old man" about to retire and Groom and the district manager, Archie Hogue, complained to Tesler about his foreign accent, that it was suddenly hard to understand when it had never been an issue before with customers, co-workers, or managers.

31. Just prior to Tesler's termination, the Orange Park store hired another meat cutter, approximately age 40. Tesler met this employee only once, when his manager was testing the new hire to determine his knowledge of meat cutting and what to pay him. When Tesler was terminated, he learned that this new hire had passed his meat cutting test and had been hired to replace Tesler. Based on information and belief, when Defendant hired this other meat cutter, it had already formulated its intentions to terminate Plaintiff.

32. Tesler's immediate manager, Campbell, his general manager, Joe Brown, and Brown's assistant Erika – managers with supervisory responsibility over or for the meat department – were all absent when Tesler was terminated on January 6, 2010, by Matt, the general manager's assistant and who had no responsibility for the meat department. Matt told Tesler, he was sorry, he respected Tesler, but was simply the messenger doing what he was told to do.

33. At all relevant times Defendant and Tesler's managers have known that he is of foreign-born national origin if not specifically Russian.

34. Tesler's diabetes constitutes a "disability" or "handicap" within the scope and meaning of the FCRA.

35. At all relevant times, Tesler has been a person or individual entitled to the rights and protections against employment discrimination based on his age, national origin, disability, and retaliation for having sought reasonable accommodations for his disability under the FCRA.

36. At all relevant times, Defendant has been an "employer" subject to the obligations and duties to refrain from employment discrimination based on age, national origin, disability and retaliation for an employee having sought reasonable accommodations for a disability under

the FCRA.

37. Plaintiff has satisfied all administrative prerequisites or conditions precedent to suit.

(Count I: Promotion Discrimination Based On Age, National Origin or Disability)

38. Plaintiff realleges and incorporates by reference the allegations of ¶¶ 2-37.

39. Tesler was well-qualified for and deserving of promotion to store meat department manager on numerous occasions between 2006 and 2009.

40. On each of those occasions Defendant either failed to consider or, if considered, passed over Tesler for promotion to the position of store meat department manager and, instead, selected a younger, non-disabled American for the position who was less qualified, experienced, and deserving of promotion than Plaintiff.

41. Defendant repeatedly denied Plaintiff promotion to the position of store meat department manager motivated in part by Plaintiff's age, national origin, or disability.

42. As a result of being wrongfully denied promotion to the position of store meat department manager, Tesler lost employment income and suffered emotional distress and mental anguish.

Wherefore, Plaintiff requests trial by jury on all issues so triable as a matter of right, the award of lost wages, prejudgment interest, and damages for emotional distress and mental anguish, and such other further relief as the evidence, equity and law warrant, and an award of taxable costs and a reasonable attorney's fee as authorized by the FCRA.

(Count II: Disability Discrimination - Denial of Reasonable Accommodations)

43. Plaintiff realleges and incorporates by reference the allegations of ¶¶ 2-3, 8, 17-

20, 34-37.

44. During 2009, Plaintiff sought reasonable accommodations for his disability – daily lunch breaks and breaks from being required to close the department – which Defendant denied to Plaintiff.

45. Defendant's denial of Plaintiff's requests for reasonable accommodations for his disability constituted discrimination on the basis of disability or 'handicap' within the prohibitions and obligations of the FCRA.

46. As a result of being wrongfully denied modest reasonable accommodations for his diabetes, Defendant aggravated Plaintiff's diabetes causing him to suffer unnecessary discomfort, physical pain and complications (including the swelling and redness in his right leg that required Plaintiff to miss three days of work) and emotional distress and mental anguish.

Wherefore, Plaintiff requests trial by jury on all issues so triable as a matter of right, the damages for the physical discomfort, pain, and emotional distress and mental anguish he suffered, and such other further relief as the evidence, equity and law warrant, and an award of taxable costs and a reasonable attorney's fee as authorized by the FCRA.

(Count III: Discriminatory Termination Based on Age, Disability, National Origin or Retaliation for Having Sought Reasonable Accommodations for His Diabetes)

47. Plaintiff realleges and incorporates by reference the allegations of ¶¶ 2-37.

48. In seeking reasonable accommodations from Defendant for his diabetes in 2009, Plaintiff engaged in activities which were protected from retaliation under the FCRA.

49. Defendant trumped up alleged customer complaints in order to try to cover up its motivation for termination of Plaintiff – Plaintiff's age, disability, national origin or retaliation

for having sought reasonable accommodations for his disability.

50.     As a result of Defendant's wrongful termination of Plaintiff in violation of the FCRA, Tesler has lost and continues to lose employment income and benefits and suffered emotional distress and mental anguish.

Wherefore, Plaintiff requests trial by jury on all issues so triable as a matter of right, the award of lost wages and benefits, prejudgment interest, and damages for emotional distress and mental anguish, and such other further relief as the evidence, equity and law warrant, and an award of taxable costs and a reasonable attorney's fee as authorized by the FCRA.

Respectfully submitted for filing this 12th day April, 2012.

> JEFFREY H. KLINK, P.A.
> 2319 Oak Street
> Jacksonville, FL 32204-4603
> TEL: 904.384.3855
> E-MAIL: jhklink@gmail.com
>
> BY: _____
> Jeffrey H. Klink (FBN: 151657)
>
> Counsel for Plaintiff LEV TESLER